## HONEYMAN *v.* HANAN, EXECUTOR.

No. 370. Argued January 14, 1937.—Decided February 1, 1937.

*Mr. Robert B. Honeyman* for appellant.

*Mr. James S. Brown, Jr.,* with whom *Messrs. Anthony F. Tuozzo* and *William Gilligan* were on the brief, for appellee.

*Mr. John F. X. McGohey,* Assistant Attorney General of New York, with whom *Mr. John J. Bennett, Jr.,* Attorney General, *Mr. Henry Epstein,* Solicitor General, and *Mr. Benjamin Heffner,* Assistant Attorney General, were on the brief, on behalf of the State of New York, as *amicus curiae,* by special leave of Court, urging affirmance of the judgment below.

By leave of Court, briefs were filed by *Mr. Harold J. Treanor,* on behalf of the Real Estate Board of New York, Inc., and by *Mr. William Gilligan,* as *amici curiae,* urging affirmance of the judgment below.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Upon the filing of the jurisdictional statement, the appellee moved to dismiss the appeal upon the ground that the decision of the federal question now raised was not necessary to the determination of the cause. Rule 12,

par. 3. Further consideration of the motion was postponed to the hearing upon the merits.

The record is brief. The suit was brought against the executor of the estate of Herbert W. Hanan, deceased, to recover a deficiency judgment upon a bond secured by a mortgage which had been foreclosed in an earlier suit in which the mortgaged property had been sold and an application for a deficiency judgment had been refused. The judgment in the present suit dismissed the amended complaint upon the ground that it did not state facts sufficient to constitute a cause of action.

The amended complaint alleged that in 1907 the John H. Hanan Realty Company, with John H. Hanan, had executed a bond for $118,000, and as collateral security the John H. Hanan Realty Company had made a mortgage covering certain premises in the city of New York; that later the bond and mortgage were assigned to John H. Hanan; that in 1920 John H. Hanan, together with Herbert W. Hanan (defendant's testator) and Addison G. Hanan, had executed their joint and several bond to the guardians of the estates of certain infants in the sum of $60,000 and as collateral security therefor John H. Hanan had assigned to the obligees the bond and mortgage first mentioned; and that thereafter the bond of John H. Hanan, Herbert W. Hanan and Addison G. Hanan had been assigned, together with the bond and mortgage first mentioned, to the plaintiff.

A copy of the bond in suit was annexed. It recited that it was executed as additional security for the payment of the first mentioned bond and mortgage, upon which the principal sum of $60,000 remained unpaid, and that the time for payment had been extended as provided in a contemporaneous agreement. The condition of the obligation was the payment of that sum with interest as the

same should become due and payable according to the terms and conditions of the bond and mortgage first mentioned and the extension agreement.

The amended complaint further alleged that the John H. Hanan Realty Company had failed to comply with the terms of the bond and mortgage first mentioned and had failed to pay the taxes on the mortgaged premises or the interest on the bond; that thereupon, in September, 1933, the plaintiff had brought an action to foreclose the mortgage and that the defendant herein was a party to that action; that pursuant to judgment therein the mortgaged premises were sold and the proceeds were applied on account of the indebtedness due the plaintiff; that the referee's report of sale was confirmed; that thereafter a motion was "duly made for a deficiency judgment" which was denied and the foreclosure action was discontinued as to the defendant herein by the filing of a stipulation; that the deficiency due the plaintiff was $58,523.35, upon which $554.01 had been received by the plaintiff from the receiver in the foreclosure action, leaving due $57,969.34, which the decedent, Herbert W. Hanan, became bound to pay.

The amended complaint and the motion to dismiss for the insufficiency of its allegations contained no mention of a federal question. The trial court granted the motion with the mere statement that "The mortgage moratorium laws apply to the facts alleged in the said complaint." The judgment of dismissal was affirmed by the Appellate Division without opinion. 246 App. Div. 781; 285 N. Y. S. 527. The Court of Appeals granted leave to appeal and in May, 1936, affirmed the judgment, also without opinion. 271 N. Y. 564; 3 N. E. (2d) 186. In the entire progress of the cause to this point of determination by the highest court of the State, the record discloses no reference to a federal question.

18

In June, 1936, upon motion, the Court of Appeals amended its remittitur by adding the following:

"A question under the Federal Constitution was presented and necessarily passed upon by this court. The plaintiff contended that chapter 794 of the Laws of the State of New York, enacted in 1933, as amended (Sections 1083-a and 1083-b of Civil Practice Act), impair the obligations of contracts, and thus violate Article I, Section 10, of the Constitution of the United States. This court held that such laws do not violate said provision of Article I, Section 10, of the Constitution of the United States." 271 N. Y. 662; 3 N. E. (2d) 473.

It is solely upon this statement in the amended remittitur that we are asked to review the judgment and to pass upon the constitutionality of the state statute. We are not aided by any discussion by the state court of the question thus described, or by its explication or construction of the statute cited, or by a statement of the particular application of the statute to which the paragraph in the amended remittitur is addressed.

Before we may undertake to review a decision of the court of a State it must appear affirmatively from the record, not only that the federal question was presented for decision to the highest court of the State having jurisdiction but that its decision of the federal question was necessary to the determination of the cause. *Lynch* v. *New York ex rel. Pierson,* 293 U. S. 52, 54, and cases there cited. Whether these requirements have been met is itself a federal question. As this Court must decide whether it has jurisdiction in a particular case, this Court must determine whether the federal question was necessarily passed upon by the state court. That determination must rest upon an examination of the record. A certificate or statement by the state court[1] that a fed-

---

[1]As to the insufficiency of a certificate by the chief justice or presiding justice of the state court, see *Railroad Co.* v. *Rock,* 4 Wall.

eral question has been presented to it and necessarily passed upon is not controlling. While such a certificate or statement may aid this Court in the examination of the record, it cannot avail to foreclose the inquiry which it is our duty to make or to import into the record a federal question which otherwise the record wholly fails to present.

In *Commercial Bank of Cincinnati* v. *Buckingham's Executors,* 5 How. 317, this Court was asked to decide a question which was said to be presented under the contract clause with respect to the validity of a statute of Ohio. The Supreme Court of that State entered upon its record an elaborate certificate stating that the validity of the statute was drawn in question upon the ground that as applied to the charter of the plaintiffs in error it "impaired the obligations thereof, and was repugnant to the constitution of the United States, and that the decision of this court [the Ohio court] was in favor of the validity of the said act of the legislature as so applied." Notwithstanding the certificate, the case was dismissed for want of jurisdiction. *Id.,* p. 343. The Court said:

"It is not enough, that the record shows that 'the plaintiff in error contended and claimed' that the judgment of the court impaired the obligation of a contract, and violated the provisions of the constitution of the United States, and 'that this claim was overruled by the court'; but it must appear, by clear and necessary intendment, that the question must have been raised, and

177, 178, 180; *Powell* v. *Brunswick County,* 150 U. S. 433, 439; *Sayward* v. *Denny,* 158 U. S. 180, 183; *Henkel* v. *Cincinnati,* 177 U. S. 170, 171; *Home for Incurables* v. *New York,* 187 U. S. 155, 158; *Fullerton* v. *Texas,* 196 U. S. 192, 194; *Louisville & Nashville R. Co.* v. *Smith, Huggins & Co.,* 204 U. S. 551, 561; *Seaboard Air Line Ry.* v. *Duvall,* 225 U. S. 477, 481; *Connecticut General Life Ins. Co.* v. *Johnson,* 296 U. S. 535; *Purcell* v. *New York Central R. Co.,* 296 U. S. 545.

must have been decided, in order to induce the judgment. Let us inquire, then, whether it appears on the face of this record, that the validity of a statute of Ohio, 'on the ground of its repugnancy to the constitution or laws of the United States' was drawn in question in this case." *Id.,* p. 341.

Pursuing that essential inquiry, the Court found that the question decided by the state court was one of the construction of the statute and not of its validity.

In *Lawler* v. *Walker,* 14 How. 149, the Supreme Court of Ohio certified that the validity of statutes of the State had been drawn in question as being in violation of the Federal Constitution and that the court had held the statutes to be valid. The certificate in that case was found to be vague and indefinite but the Court also restated the above-quoted ruling of *Commercial Bank of Cincinnati* v. *Buckingham's Executors, supra.* While in *Parmelee* v. *Lawrence,* 11 Wall. 36, the certificate was made by the presiding judge of the state court and not by the court itself, we took occasion to say:

"We will add, if this court should entertain jurisdiction upon a certificate alone in the absence of any evidence of the question in the record, then the Supreme Court of the State can give the jurisdiction in every case where the question is made by counsel in the argument. The office of the certificate, as it respects the Federal question, is to make more certain and specific what is too general and indefinite in the record, but it is incompetent to originate the question within the true construction of the 25th section [of the Judiciary Act]." *Id.,* p. 39.

This statement was quoted with approval in *Powell* v. *Brunswick County,* 150 U. S. 433, 439.

The case of *Brown* v. *Atwell,* 92 U. S. 327, affords another illustration of the rule. The judgment was rendered in the Court of Appeals of New York and an entry was made in its record that on the argument of the

appeal it was claimed by the appellant that the Act of Congress of 1836, known as the Patent Act, governed the effect of the several transfers relating to the letters patent appearing in the case, and that the court had decided against the claims urged under that act. This Court observed that, until the certificate of the Court of Appeals, it nowhere appeared in the record that any question was raised as to the effect of the patent laws upon the title under consideration. And the Court said (*id.*, pp. 329, 330):

"We have often decided that it is not enough to give us jurisdiction over the judgments of the State courts for the record to show that a Federal question was argued or presented to that court for decision. It must appear that its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been given without deciding it. *Commercial National Bank of Cincinnati* v. *Buckingham's Executors*, 5 How. 341; *Lawler et al.* v. *Walker et al.*, 14 *id.* 154; *R. R. Co.* v. *Rock*, 4 Wall. 180; *Parmelee* v. *Lawrence*, 11 *id.* 38.

"The same cases also establish the further rule, that 'the office of the certificate, as it respects the Federal question, is to make more specific and certain that which is too general and indefinite in the record, but is incompetent to originate the question'."

The Court found that the record did not present the federal question to which the certificate referred and the case was accordingly dismissed.

The rule was succinctly stated in *Rector* v. *City Deposit Bank Co.*, 200 U. S. 405, 412, as follows:

"It is elementary that the certificate of a court of last resort of a State may not import a Federal question into a record where otherwise such question does not arise, it is equally elementary that such a certificate may serve to elucidate the determination whether a Federal question exists."

Thus the true function of a certificate or statement of a state court, by way of amendment of, or addition to, the record, is to aid in the understanding of the record, to clarify it by defining the federal question with reasonable precision and by showing how the question was raised and decided, so that this Court upon the record as thus clarified may be able to see that the federal question was properly raised and was necessarily determined. Our decisions in cases where certificates have been found useful should be read in the light of that fundamental consideration. In *Marvin* v. *Trout,* 199 U. S. 212, 223, as explained in *Consolidated Turnpike Co.* v. *Norfolk & Ocean View Ry. Co.,* 228 U. S. 596, 599, there was "a record disclosure of the existence of the Federal question," which was also certified. In the latter case it was assumed that the certificate, made by order of the state court, operated to show that some federal question was decided, but on examining the record this Court found the question to be unsubstantial and denied rehearing, the case having previously been dismissed for want of jurisdiction. *Id.,* p. 603. The record in *Cincinnati Packet Co.* v. *Bay,* 200 U. S. 179, 182, showed that the federal question had been raised and the certificate aided in disclosing that the question was not treated as having been raised too late under the local procedure, a point upon which the state court was the judge. Applying the rule, in *Rector* v. *City Deposit Bank Co., supra,* the Court concluded that as the suit was brought by a trustee in bankruptcy by virtue of the authority conferred upon him by the act of Congress the certificate made "clear the effect, if it were otherwise doubtful, that rights under the bankrupt law were relied upon and passed upon below." See, also, *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238, 243, 244. It was in the light of these decisions that the question was presented in *Whitney* v. *California,* 274 U. S. 357, 360–362. The writ of error had been dismissed

for want of jurisdiction (269 U. S. 530) and a motion for rehearing was granted. *Id., p.* 538. The Court of Appeal of the State, as an addition to the record, entered an order stating that the question whether the California Criminal Syndicalism Act and its application were repugnant to the Fourteenth Amendment to the Federal Constitution was considered and passed upon by the court. While this Court said that the record did not show that the defendant had raised or the state court had decided a federal question except as it appeared from that order, the record did disclose facts indicating the presence of the federal question which the order of the state court said was actually presented and decided, and accordingly jurisdiction was entertained. And it has been in recognition of the established principle governing the exercise of our jurisdiction, and not as a departure from it, that we have said that opportunity might be afforded upon seasonable application to obtain a certificate from the state court where it appeared that an appropriate certificate might lead to a better understanding of the record. See *Lynch* v. *New York ex rel. Pierson, supra; International Steel Co.* v. *Surety Co.,* 297 U. S. 657, 662.

In some of the cases cited above, we found from our examination of the record that, notwithstanding the certificate, the decision of the state court rested upon an adequate non-federal ground and hence we were without jurisdiction. See *Commercial Bank of Cincinnati* v. *Buckingham's Executors, supra; Brown* v. *Atwell, supra; Powell* v. *Brunswick County, supra.* A similar result follows where, even assuming that the state court has formally determined a federal question, it does not appear to have been a substantial one. See *Consolidated Turnpike Co.* v. *Norfolk & Ocean View Ry. Co., supra.* In other cases an examination of the record has left the Court in doubt as to what has actually been determined. That is the situation in the present case.

24

The appellee points to the provision of § 1078 of the Civil Practice Act of New York (enacted long before the so-called moratorium acts) that, after final judgment for the plaintiff in a foreclosure action, no other action shall be maintained to recover any part of the mortgage debt without leave of the court in which the former action was brought. In the instant case the amended complaint does not allege that such leave was obtained. We are also advised of decisions by the state court, prior to the one here sought to be reviewed, construing Chapter 794 of the Laws of New York of 1933 (§§ 1083-a and 1083-b of the Civil Practice Act) to which the amended remittitur refers. That act (§ 1083-a) forbids a judgment for any residue of the debt, remaining unsatisfied after sale of the mortgaged property, except as therein provided. Provision is made for an application by the creditor in the foreclosure action for leave to enter a deficiency judgment, and thereupon the court is to determine the fair and reasonable market value of the mortgaged premises and is to make an order directing the entry of a deficiency judgment, which is to be for an amount equal to that remaining due less the market value as determined, or the sale price of the property whichever shall be the higher; and if no motion for a deficiency judgment is thus made, the proceeds of the foreclosure sale are to be regarded as full satisfaction of the mortgage debt "and no right to recover any deficiency in any action or proceeding shall exist." Section 1083-b provides that in actions, other than foreclosure actions, to recover for an indebtedness secured solely by a mortgage on real property and originating simultaneously with such mortgage and secured thereby, against any one "directly or indirectly or contingently liable therefor," the party against whom the money judgment is demanded shall be entitled to set off the reasonable market value of the mortgaged property less prior liens.

The Court of Appeals had sustained the constitutional validity of this legislation which would seem to be applicable to an action upon a collateral bond such as that described in the amended complaint herein. See *Klinke* v. *Samuels,* 264 N. Y. 144; *City Bank Farmers Trust Co.* v. *Ardlea Incorporation,* 267 N. Y. 224.

With these recent decisions in mind, it may be, as has been suggested, that the Court of Appeals considered the federal question, which it described in the amended remittitur as relating to the validity of §§ 1083-a and 1083-b, to be no more than a challenge of the requirement that the right to a deficiency judgment should be heard and determined in the foreclosure action, and sustained the validity of that requirement, without reviewing, or deeming it necessary to review, the questions which could have been raised, and if properly raised could have been brought to this Court in the foreclosure action to which both the plaintiff and defendant herein had been parties. Whether this view of the action of the state court is the correct one, we are unable satisfactorily to determine. If its decision was in truth based upon the theory that by a proper construction of the statute or for any other reason the extent of the deficiency or the right to recover it had been finally determined in a prior litigation, there was no longer a necessity to inquire whether the statute would be constitutional in its application to a different case—a case lacking the feature of any prior determination—, and an answer to that inquiry would be superfluous, even if attempted.

In the exercise of our appellate jurisdiction we have power not only to correct errors in the judgment under review but to make such disposition of the case as justice requires. We have applied this principle to cases coming from state courts where supervening changes had occurred since the entry of the judgment, and where the record failed adequately to state the facts underlying

the decision of the federal question. See *Patterson* v. *Alabama*, 294 U. S. 600, 607; *Villa* v. *Van Schaick*, 299 U. S. 152. We have afforded an opportunity for appropriate presentation of the question by an amendment of the record as the state court might be advised. *Villa* v. *Van Schaick, supra.* We think that a similar opportunity should be accorded here in order that uncertainty may be removed and that the precise nature of the federal question, how it was raised and the grounds of its disposition, may be definitely set forth, so that we may be able to decide whether a substantial question within our jurisdiction has necessarily been determined.

For that purpose the judgment is vacated and the cause is remanded for further proceedings.

*Judgment vacated.*